**James A. WECK et al., Plaintiffs,**

v.

**Richard R. CROSS et al., Defendants.**

**No. 79 C 2786.**

United States District Court,
N. D. Illinois, E. D.

Nov. 14, 1980.

John B. Murnighan, Green & Murnighan, Chicago, Ill., for plaintiffs.

Theodore W. Grippo, Clarence O. Redman, Bedell A. Tippins, Keck, Mahin & Kate, Chicago, Ill., for defendants.

Milan C. Miskovsky, Ralph W. Christy, Harvey Simon, Jeffrey M. Werthan, Washington, D.C., for Federal Home Loan Bank Board as amicus curiae.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Defendant Cardunal Savings and Loan Association ("Cardunal") has asked this Court to review a discovery ruling by Magistrate John W. Cooley. On April 18, 1980 Magistrate Cooley had ordered Cardunal to produce certain governmental reports of examination of Cardunal ("reports") for "counsel's eyes" only. On August 14, 1980 Magistrate Cooley modified that order to permit plaintiffs direct access to the reports, provided that plaintiffs not disclose any of the information contained in the reports. Cardunal has moved for a review of that modification and for entry of a protective order restricting access to the reports to plaintiffs' counsel. For the reasons stated in this memorandum opinion and order, Cardunal's motion is denied.[1]

Under federal statutes the Federal Home Loan Bank Board (the "Board") is the operating head of FSLIC, which is made responsible for the supervision and regulation of all federally insured savings and loan associations. 12 U.S.C. §§ 1461–68. In the exercise of its authority the Board conducts periodic examinations of the financial soundness of, and legal compliance by, all such associations. Federal examiners produce written reports of examinations for submission to the Bank Board, with copies provided to the association itself.

As part of their discovery request under Fed.R.Civ.P. 34 plaintiffs asked that Cardunal produce the reports from 1975 through 1979, and that request was sustained by the Magistrate's two orders. Cardunal argues that it cannot be compelled to produce the reports on two grounds: They are the prop-

---

1. On September 10, 1980 this Court had granted disclosure of the "reports of examination ... issued by the Office of the Illinois Savings and Loan Commissioner." When the defendants' motion for reconsideration made it clear (as the parties' briefs on the earlier motion had not) that those reports were the same ones prepared by the Federal Savings and Loan Insurance Corporation ("FSLIC")—the same reports that are the subject of the current motion—this Court stayed the effectiveness of its earlier order.

erty of the Board, and they are assertedly privileged.

As to the first of these arguments, 12 C.F.R. § 505.5(b) provides (emphasis added):

*Information available to insured institutions and to State and Federal agencies.* A copy of each report of the regular examination of each insured institution or affiliate is made available by the Board's Supervisory Agent at the appropriate Federal Home Loan Bank to the institution examined . . . *All reports or other information made available pursuant to this paragraph shall remain the property of the Board. . . .*

Thus the reports are indeed the property of the Board, although a copy is routinely given to the institution examined.

Fed.R.Civ.P. 34(a) provides:

Any party may serve on any other party a request (1) to produce . . . any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the *possession, custody or control* of the party upon whom the request is served . . . (emphasis added).

Under the Rule the legal ownership of a document is not determinative; possession or control is sufficient to permit a request for production. *See,* 4A Moore's Federal Practice § 34.17. Because Cardunal had permanent possession of copies of the reports and because they are clearly relevant to this action, they are potentially discoverable under Rule 34.

Accordingly Cardunal's first ground is unavailing, and Cardunal can withhold production only if the second branch of its argument justifies that result—if the documents are protected by a privilege.[2] In all events, it is plain that federal regulations do not permit Cardunal to produce the reports:[3]

*Prohibition against disclosure.* Except as authorized by this part or otherwise by the Board, no officer, employee, or agent of the Board or of any Federal Home Loan Bank shall disclose or permit the disclosure of any unpublished information of the Board to anyone (other than an officer, employee, or agent of the Board or of a Federal Home Loan Bank properly entitled to such information for the performance of his official duties) . . . (12 C.F.R. § 505.5(c)).

*Appearance by person served.* Except as the Board has authorized disclosure of the relevant information, or except as authorized by law, any person who has information of the Board that may not be disclosed under this part and is required to respond to a subpoena or other legal process shall attend at the time and place therein mentioned and respectfully decline to produce such information or give any testimony with respect thereto, basing his refusal upon this Part. If, notwithstanding, the court or other body orders the disclosure of such information or the giving of such testimony, the person having such information of the Board shall continue respectfully to decline to produce such information and shall promptly report the facts to the Board for such action as the Board may deem appropriate. (12 C.F.R. § 505.6(b)).

Unless it is excused from discovery by a privilege, Cardunal must therefore either refuse to comply with a federal regulation or face possible sanctions under Fed.R. Civ.P. 37.

In the present posture of this litigation Cardunal can be relieved from this dilemma. In its brief *amicus curiae* the Board has correctly pointed out that plaintiffs did not request the information from it, nor did process issue to the Board demanding production. But it went on to say:

**2.** This Court will assume *arguendo* the existence of an implied evidentiary privilege protecting the reports from general public disclosure. *See, Federal Home Loan Bank Board v. Superior Court,* 494 F.Supp. 924 (D.Ariz.1980); *Sterling National Bank of Davie v. Comptroller of Currency,* 307 F.Supp. 778 (D.D.C.1970). However, as Judge Marshall decided in an ear-

lier opinion in this case, such a general privilege may be overridden by the need to protect shareholders against breaches of fiduciary obligations.

**3.** "Information" in both 12 C.F.R. § 505.5(c) and § 505.6(b) includes examination reports. 12 C.F.R. § 505.2(a).

Defendant Cardunal did informally advise the Bank Board of this proceeding. However, in view of the fact that the prior production order severely limited the scope of production, the Bank Board believed that its interests were adequately protected.

So the Board itself recognizes that non-disclosure is not an absolute necessity if the requisite interests are properly protected. And consistently with that recognition, the Board stated at the beginning of its brief:

> The Bank Board, however, takes this opportunity to stress to the Court its vital interest in protecting the confidentiality of examination reports. Thus, the Bank Board urges that the Court maintain the original protective order it issued in this case in effect. However, should this Court now find it necessary to revise the protective order previously entered to permit broader dissemination of the subject reports, we believe that it is imperative to condition such broader dissemination upon a new protective order which will continue to protect the confidentiality of these reports. As demonstrated below, the Bank Board submits that such a provision is necessary to protect the integrity of its examination process.

Having so said at the outset, the Board left the Court waiting in vain for the other shoe to drop. It concluded its brief by urging that the original protective order be kept in effect.

This Court will accept the invitation initially issued by the Board's brief, contemplating the possibility of a broader dissemination and a revised protective order. Though neither plaintiffs nor Cardunal invoked the specific procedures of the regulations, their purpose has been served by the Board's entry into this case as *amicus curiae*. This Court will not require the parties to undergo the formalism of now proceeding with 12 C.F.R. § 505.6(b), reporting the facts to the Board so that the Board can take the action it deems appropriate—at least in the first instance presenting its views to this Court, as it has already done.

As for the policy considerations advanced by the Board in that capacity as *amicus curiae*, this Court's order is entirely consistent with them. First, there will be no general public disclosure of the reports at this time,[4] the undesirability of which is the main thrust of the Board's position on the merits. Second, a shareholder action to enforce the fiduciary obligations of the officers and directors of a proprietary savings and loan association parallels and does not undermine the Board's interest in sound management of such institutions. See the Board's own regulations dealing with such fiduciary obligations, conflicts of interest and related matters, 12 C.F.R. §§ 571.7(b) and 571.9; *Rettig v. Arlington Heights Federal Savings & Loan Ass'n*, 405 F.Supp. 819, 824–26 (N.D.Ill.1975).

Although in the early stages of this litigation the Court does not of course find that such a situation exists here, it would be truly anomalous if official reports disclosed serious breaches of fiduciary obligations only to conceal them from the persons injured thereby. Would that "insure the security and integrity of financial institutions," as Congress noted in exempting from the Freedom of Information Act any information contained in or relating to examination reports? H.Rep.No. 1497, 89th Cong., Second Sess., p. 11 (1966), U.S. Code Cong. & Admin. News 1966, pp. 2418, 2428.

Accordingly, upon full consideration though for somewhat different and additional reasons, the Court adheres to the principles stated in its September 10, 1980 order and will not overturn Magistrate Cooley's August 14, 1980 order. Access to the reports shall be provided to plaintiffs as well as their attorneys for purposes of preparation for trial. As the Court stated at the conclusion of its September 10 order:

---

4. We need not now confront the possible issue of the validity of the regulations if they were to come into direct conflict with the principles stated by Judge Marshall and with the proper exercise of jurisdiction by this Court. Sound jurisprudential considerations require that such an issue, which may never arise, be dealt with only if and when it does.

To respond to defendants' legitimate concerns, the Court will require that plaintiffs be subject to restrictions that will assure that before trial the information disclosed will not be exposed to persons not directly involved in this action.

Accordingly the parties are directed to confer regarding the terms of an appropriate protective order to be submitted to this Court for entry. Failing agreement as the result of such conference, either party may tender its own proposed order.