## In re SUNRISE SECURITIES LITIGATION.

### This Document Relates to All Actions.

### MDL No. 655.

United States District Court, E.D. Pennsylvania.

Jan. 8, 1990.

Berger & Montague, P.C., Philadelphia, Pa., Greenfield & Chimicles, Haverford, Pa., Squire, Sanders & Dempsey, Washington, D.C., for plaintiffs.

Dechert, Price & Rhoads, Philadelphia, Pa., for defendants.

## MEMORANDUM

O'NEILL, District Judge.

### I. *Introduction.*

In this multidistrict litigation,[1] plaintiff the Federal Savings and Loan Insurance

---

1. Three groups of claims originally were consolidated for pretrial proceedings in this litigation: state common law and Securities Exchange Act of 1934 claims asserted by Old Sunrise shareholders (the "Securities case"); fiduciary duty claims asserted by the Federal Savings and Loan Insurance Corporation in its corporate capacity (the "Fiduciary Duty case"); and state common law and civil RICO claims asserted by former Old Sunrise depositors (the "Depositors

Corporation ("FSLIC")[2] and third parties the Federal Home Loan Bank of Atlanta ("FHLB–A") and the Federal Asset Disposition Association ("FADA") have moved for clarification and/or reconsideration of certain governmental privilege issues decided in my Memorandum and Order of May 31, 1989 ("May 31 Memorandum").[3] For the reasons that follow, I will grant the motion for clarification, and deny the motion for reconsideration.

On March 25, 1988, defendants Deloitte, Haskins & Sells and the outside directors (hereinafter "DH & S and the outside directors") moved to compel FSLIC, FHLB–A and FADA to produce internal workpapers and other documents generated in the government's examination of Sunrise. In response to this motion, FSLIC claimed that the documents were not discoverable under Fed.R.Civ.P. 34 because they were not in FSLIC's possession, custody or control. FSLIC did not assert a claim of governmental privilege with respect to the documents, but attempted to "reserve the right to assert the governmental privilege if this Court orders FSLIC to produce documents FSLIC contends are irrelevant and not the proper subject of a Rule 34 request to plaintiff." *See* Opposition of the Federal Savings and Loan Insurance Corporation to the Motion to Compel Documents Filed by Deloitte, Haskins & Sells and the Outside Directors, dated May 24, 1988, at 33, n. 34 *citing* Letter from Donald T. Bucklin to All Counsel, dated March 9, 1988 at 2–3.

In the May 31 Memorandum I held that FSLIC waived its right to assert any governmental privilege claim by failing to comply with the time constraints of Pre-trial Order No. 5. Section V, Paragraph K of Pretrial Order No. 5 states: "On or before October 2, 1987, any party claiming privilege as a bar to producing documents shall assert such privilege with whatever particularity is required by applicable law." I concluded in the May 31 Memorandum that "[b]y failing to assert its claim of governmental privilege in time, FSLIC has waived the privilege." May 31 Memorandum at 67, n. 98.[4]

FSLIC, FHLB–A and FADA have moved for clarification and/or reconsideration of the May 31 Memorandum, seeking a determination that I did not hold that FHLB–A and FADA waived their right to assert a claim of governmental privilege. FSLIC has not moved for reconsideration of my conclusion that FSLIC waived its right to assert a claim of governmental privilege.

In its response to the motion for clarification and/or reconsideration, DH & S and the outside directors argue that the documents in question are discoverable on three grounds. First, DH & S and the outside directors claim that FSLIC has possession, custody or control of the documents and therefore must produce the documents pursuant to Fed.R.Civ.P. 34(a). Second, DH & S and the outside directors claim that the May 31 Memorandum should

case"). I granted summary judgment in favor of the defendants in the Depositors Case on November 9, 1989.

**2.** The recently enacted Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, § 401, 103 Stat. 183, 354 (1989), dissolved FSLIC. FSLIC's successor, for purposes of this suit, will be the Federal Deposit Insurance Corporation ("FDIC"), as manager for the FSLIC insurance fund, and as assignee of Old Sunrise's claims against its former directors, officers, attorneys and accountants. In order to minimize confusion, the term "FSLIC" will be used in this Memorandum to refer to FSLIC and its successor agency under the FIRREA.

**3.** FADA asserts that it does not and has never had possession, custody or control of the examination workpapers or internal agency memoranda involved in this discovery dispute. FADA's participation in this motion is for the limited purpose of protecting its assertion that the May 31 Memorandum did not hold that FADA waived any privilege. *See* Brief of FSLIC, FHLB–A and FADA Regarding Certain Governmental Privilege Issues in Response to Order Issued September 27, 1989, at 1, n. 2.

**4.** In the Order accompanying the May 31 Memorandum I required FHLB–A to submit a representative sample of the documents in its possession to the Special Master for review as to relevance. May 31 Order, ¶ 3.C.i. By Order dated August 22, 1989, I stayed this portion of the May 31 Order pending resolution of the instant motion for clarification and/or reconsideration.

be construed as holding that FHLB–A and FADA waived their governmental privilege claims. Finally, DH & S and the outside directors argue that if FHLB–A has not waived its claim of governmental privilege, the privilege does not protect the documents at issue.

For the reasons that follow, I hold that FSLIC does not have possession, custody or control of the documents in question. Further, I conclude that FHLB–A and FADA, as non-parties, were not bound by Pretrial Order No. 5, and that they can now assert their privilege claim. Finally, I hold that the internal agency documents currently in FHLB–A's possession are not protected by an absolute privilege and that FHLB–A must produce them to the Special Master for review as to relevance.

## II. *Discussion.*

### A. *FSLIC does not have "possession, custody or control" of the documents in question.*

■ Federal Rule of Civil Procedure 34(a) provides that a party may serve on any other party a request to produce documents in the "possession, custody or control" of the party upon whom the request is served. Under this Rule, legal ownership of a document is not determinative. Possession or control over the documents is sufficient to permit a request for production. *Weck v. Cross*, 88 F.R.D. 325, 327 (N.D.Ill.1980). *See generally* Wright & Miller, 8 *Federal Practice and Procedure* § 2210, pp. 620–626.

■ Federal regulations establish that all bank examination reports, workpapers and internal agency memoranda are the exclusive property of the Federal Home Loan Bank Board ("FHLBB")[5] and that only FHLBB has control over the doc-

uments. *See* 12 C.F.R. §§ 505.5, 505.6; *Colonial Savings & Loan Ass'n v. St. Paul Fire & Marine Insurance Co.*, 89 F.R.D. 481, 484 (D.Kan.1980) (FHLBB reports of bank examinations are exclusive property of FHLBB). *Accord In re Homeunity Shareholder Litigation*, 1988 WL 52014, 1988 U.S.Dist. LEXIS 4670 (E.D.Pa.1988).

FSLIC asserts that because the documents are the exclusive property of the FHLBB, it has never had possession, custody or control of the documents. *See* Brief of FSLIC, FHLB–A and FADA Regarding Certain Governmental Privilege Issues in Response to Order Issued September 27, 1989 at 14–15. FSLIC also claims that it has never had physical possession or custody of the documents. *Id.* at 15.[6] I accept FSLIC's representations. Because FSLIC has never had possession, custody or control over the documents in question, I conclude that FSLIC cannot be compelled to produce the documents pursuant to Rule 34(a).

### B. *FADA and FHLB–A have not waived their right to assert a claim of governmental privilege.*

■ In discussing whether FSLIC waived its right to assert a claim of governmental privilege, I stated in the May 31 Memorandum:

… FSLIC states that it has not withheld any of these documents pursuant to a claim of governmental privilege, but claims that "[i]f it is determined by this Court that this material should be produced, any privileges will be raised at that time." Opposition of FSLIC to the Motion to Compel Documents Filed by DHS and the Outside Directors, at 28, n. 32; *see also* at 33, n. 34. But Section V, Paragraph K of Pretrial Order No. 5

---

5. Until the enactment of FIRREA, FHLBB directed the operation of FSLIC and promulgated regulations governing the federal savings and loans pursuant to 12 U.S.C. § 1464(a).

6. In a letter to all counsel dated June 4, 1987, counsel for FSLIC stated "we are in the process of reviewing these documents …" in connection with ongoing discovery proceedings. Letter from Donald T. Bucklin to All Counsel, dated June 4, 1987. DH & S asserts that this

language compels the conclusion that the documents in question are in the possession, custody or control of FSLIC and therefore subject to production under Rule 34(a). I decline to adopt this interpretation. While the counsel for FSLIC may have had access to the documents, I conclude that in this case, access alone does not establish that FSLIC has "possession, custody or control" of the documents.

specifies that "On or before October 2, 1987, any party claiming privileges as a bar to producing documents shall assert such privilege with whatever particularity is required by applicable law." By failing to assert its claim of governmental privilege in time, FSLIC has waived the privilege.

May 31 Memorandum at 67, n. 98. DH & S and the outside directors argue that I held in the May 31 Memorandum that in addition to FSLIC, both FHLB–A and FADA waived their rights to assert governmental privilege claims by failing to assert their claims on or before October 2, 1987.[7]

7. The parties do not dispute that FHLB–A and FADA failed to assert their privilege claims in accordance with Section V, Paragraph K of Pretrial Order No. 5.

8. While counsel for FSLIC, who is also counsel for FHLB–A and FADA, may have negotiated or agreed to the terms of Pretrial Order No. 5 as counsel for FSLIC, I conclude that any such actions by him on FSLIC's behalf did not also bind FHLB–A and FADA.

9. On May 11, 1987, counsel for Blank, Rome, Comisky and McCauley ("Blank Rome") served FHLB–A with a third party subpoena duces tecum for pre-receivership internal agency documents related to the FHLB–A's examinations of Old Sunrise. In response to that request, FHLB–A adopted FSLIC's objections to Blank Rome's first request for production of documents as its own response pursuant to Fed.R. Civ.P. 45(d)(1). Accordingly, by adoption, FHLB–A made the following objection:

(9) ... to the production of documents related to the examination and investigation of Sunrise and the individual defendants by federal or state regulatory agencies or reflecting deliberations or recommendations made during the formulation of governmental decisions and policy and all other documents subject to governmental privilege or nondisclosure under federal or state law (e.g. 12 C.F.R. § 505.5).

See Plaintiff's Objections to Defendant Blank, Rome, Comisky & McCauley's First Request for the Production of Documents Addressed to the Federal Savings & Loan Insurance Corporation and Duplicate Request of William Frame, dated January 23, 1987, at 4, paragraph 9. This objection preserved FHLB–A's claim of privilege.

Initially, FSLIC's objection constituted a valid assertion of governmental privilege. FSLIC made a binding waiver of the privilege, however, by representing to this Court and to opposing counsel in subsequent correspondence and pleadings that it had not asserted a claim of governmental privilege. See Opposition of Federal Savings and Loan Insurance Corporation to

By its own terms, Paragraph V of Pretrial Order No. 5 applies only to *parties* to the litigation, as the persons who negotiated the terms of the Order.[8] As non-parties neither FHLB–A nor FADA were bound by the time constraints of the Order. I conclude that neither FHLB–A nor FADA waived the right to assert claims of governmental privilege with respect to the documents at issue. As FHLB–A and FADA properly have asserted claims of governmental privilege,[9] I must determine whether the governmental privilege FHLB–A claims protects the documents at issue.[10]

the Motion to Compel Documents Filed by Deloitte, Haskins & Sells and the Outside Directors, at 33, n. 34, citing Letter from Donald T. Bucklin to All Counsel, dated March 9, 1988, at 2–3. FHLB–A made no such representation, and may rely on its adoption of FSLIC's objections to assert a claim of governmental privilege.

On December 18, 1987, Blank Rome also served FADA with a third party subpoena duces tecum. Pursuant to Fed.R.Civ.P. 45(d)(1), FADA filed separate General and Specific Objections to the subpoena. These Objections included the following:

(9) FADA objects to the production of documents related to the examination and investigation of Sunrise and the individual defendants by federal or state regulatory agencies or reflecting deliberations and recommendations made during the formulation of governmental decisions and policies and all other documents subject to governmental privilege or nondisclosure under federal and state law.

See Objections of Federal Asset Disposition Association to Subpoena Duces Tecum of Blank, Rome, Comisky and McCauley, at 4, paragraph 9. This objection properly preserved FADA's privilege claim.

I also note that counsel for FHLBB agreed that for the purposes of this multidistrict litigation, defendants could seek discovery through the vehicle of third party subpoenas served on FHLB–A, rather that issuing third party subpoenas upon FHLBB. See Brief of FSLIC, FHLB–A and FADA Regarding Certain Governmental Privilege Issues in Response to Order Issued September 27, 1989, at 15–16. Therefore, the defendants properly sought production of documents from FHLB–A.

10. DH & S and the outside directors also argue that FHLB–A has failed to comply with Paragraph V, Section K of Pretrial Order No. 5, because it failed to assert its privilege claim as required by applicable law. In particular, DH & S and the outside directors claim that in

C. *FHLB–A is not entitled to an absolute privilege and must produce the documents in question to the Special Master.*

FHLB–A argues that the examination-related documents DH & S and the outside directors seek are protected by a "bank examination privilege," codified at 12 C.F.R. § 505 *et seq.* According to FHLB–A, the "bank examination privilege" is an absolute privilege which prohibits the disclosure of confidential FHLBB documents related to the examination and federal supervision of thrift institutions.[11]

FHLB–A claims that the internal memoranda and workpapers generated in the course of the examination of Old Sunrise fall within the definition of "information of the Board" in 12 C.F.R. § 505.2. This Section provides:

all information coming into the possession of the Board or of any Member thereof, of the Federal Savings and Loan Insurance Corporation, or of any Federal Home Loan Bank [thereof] ... in the performance of duties for or on behalf of the Board or of a Federal Home Loan Bank, or elsewhere, including any examination report or related information in connection with examinations made by examiners selected, approved, or appointed by the Board.

12 C.F.R. § 505.2.

The regulations state that "information of the Board" is not subject to disclosure except with approval of the Board. 12 C.F.R. § 505.5 provides:

Except as otherwise provided by this part, or as may be specifically authorized by the Board, information of the Board that has not been published in accordance with § 505.3 of this part and is not available from other sources will not be made public or otherwise disclosed if such information is:

\*   \*   \*   \*   \*   \*

Contained in or related to examination, operating or condition reports prepared by, or for the use of, the Board or a Federal Home Loan Bank, relating to the affairs of a member institution or affiliate thereof, or any other person engaged in, or proposing to engage in the savings and loan business.

12 C.F.R. § 505.5(a)(2).

The procedure for asserting the "bank examination privilege" is described in Section 505.6:

If any person, whether or not an officer or employee of the Board or of a Federal Home Loan Bank, has information of the Board that may not be disclosed under this part and in connection therewith is served with a subpoena, ... he shall promptly advise the Board of such service and of all relevant facts, including the documents and information requested and any facts which may be of assistance to the Board in determining whether such documents or information should be made available ...

\*   \*   \*   \*   \*   \*

Except as the Board has authorized disclosure of the relevant information, or except as authorized by law, any person who has information of the Board that may not be disclosed under this part and is required to respond to a subpoena or other legal process shall attend at the time and place therein mentioned and respectfully decline to produce such information or give any testimony with

---

order to properly assert a claim of governmental privilege, FHLB–A should have complied with the requirements of *Vaughn v. Rosen*, 523 F.2d 1136 (D.C.Cir.1975). Because I have already held that FHLB–A was not bound by Pretrial Order No. 5, FHLB–A has not waived its privilege claim by failing to assert it in the manner required by *Vaughn.* In addition, I conclude that FHLB–A need not comply with *Vaughn* in order to assert its privilege claim at this time. *See infra* at 667–668.

11. Although FADA joined in this motion solely for the purpose of protecting its right to assert a privilege claim, *see supra* n. 2, absent any compelling argument to the contrary this discussion of the "bank examination privilege" will apply to any documents FADA may withhold in the future pursuant to a claim of "bank examination privilege." Therefore, I will compel FADA to produce to the Special Master all internal workpapers and memoranda in its possession, custody or control sought by DH & S and the outside directors.

respect thereto, basing his refusal upon this part. If, notwithstanding, the court or other body orders the disclosure of such information, the person having such information of the Board shall continue respectfully to decline to produce such information and shall promptly report the facts to the Board for such action as the Board may deem appropriate.

12 C.F.R. §§ 505.6(a), (b). In light of my decision that FHLB–A has not waived its privilege claims, I hold that FHLB–A has properly preserved and may now raise a claim of "bank examination privilege" under 12 C.F.R. § 505 *et seq.*

■ For the reasons set forth below, I conclude that the "bank examination privilege" is not an independent evidentiary privilege. I will treat FHLB–A's privilege claim as an assertion of "official information privilege," and hold that the privilege may not cover the documents in question. Therefore, I will order FHLB–A to produce the documents in their entirety to the Special Master for relevancy review.

The regulations FHLB–A relies upon in claiming a "bank examination privilege" are FHLBB's Freedom of Information Act ("FOIA") implementing regulations. *Denny v. Carey,* 78 F.R.D. 370, 373 (E.D.Pa. 1978). In *Denny,* the Court held that while reports prepared by bank regulatory bodies are beyond the scope of FOIA, 5 U.S.C. § 552(b)(8), "exemption from the Freedom of Information Act, ..., *does not create independently any evidentiary privilege;* the effect of such exclusion, rather, is only to permit withholding of these categories of documents from the public generally." *Id.* (citations omitted) (emphasis supplied) *citing Kerr v. U.S.District Court,* 511 F.2d 192 (9th Cir.1975) *aff'd,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). *Accord Bank of America National Trust & Savings Ass'n v. Hotel Rittenhouse Associates,* 101 F.R.D. 10, 11 (E.D.Pa.1983); *In*

*re: Franklin National Bank Securities Litigation,* 478 F.Supp. 577, 582 (E.D.N.Y. 1979). *See also Jupiter Painting Contracting Co., Inc. v. United States,* 87 F.R.D. 593, 597 (E.D.Pa.1980).

FHLB–A's reliance on *Lincoln Savings & Loan Ass'n v. UN Financial Corp.,* 120 F.R.D. 3 (D.D.C.1988), for the proposition that the "bank examination privilege" is an independent evidentiary privilege is misplaced. *Lincoln* involved an action between two private parties in the Southern District of Florida in which the plaintiff sought to enforce a subpoena against FHLBB, a non-party located in the District of Columbia. The *Lincoln* Court noted that the regulations prohibit the Board from releasing workpapers and related materials. *Id.* at 5. The Court also stated that

*[t]he Bank Board will approve release* of confidential documents only upon a showing that the requested documents are highly relevant to the litigation, the movant has exhausted other sources of the information, the movant will enter into a protective order, and the release will not harm the Bank Board's interest.

*Id.* (citation omitted) (emphasis supplied). This language is a statement of the *Lincoln* Court's understanding of the Bank Board's criteria for releasing documents. The Court did not address the circumstances under which a Court might require production of documents covered by the regulations' exemption from FOIA disclosure.[12]

I will follow *Denny* and hold that the "bank examination privilege" is not an independent evidentiary privilege. However, because FHLB–A argues that the policies supporting the "bank examination privilege" are similar to other, more general governmental privileges, *see* Brief of FSLIC, FHLB–A and FADA Regarding Certain Governmental Privilege Issues in Response to Order Issued September 27,

---

**12.** I also note that the *Lincoln* Court's discussion of the Bank Board's criteria for releasing confidential documents is dictum. The *Lincoln* Court ultimately based its refusal to compel production on the fact that the Florida Court in which the action was pending might compel other parties to produce the documents. *Lin-*

*coln,* 120 F.R.D. at 6. The Court stated that the Florida Court was "more intimately aware of the specific facts of [the] case and may be better able to balance the various factors." *Id.* The Court denied the motion to compel without prejudice to its renewal in the Florida Court.

1989 at 7–9, I will treat FHLB–A's claim of privilege as an assertion of an "official information privilege."

In *Franklin National Bank, supra,* the Court discussed the factors to consider in determining whether documents withheld under a claim of "official information privilege" must be produced. *Franklin National Bank* was a multidistrict proceeding in which FDIC brought breach of fiduciary duty and negligence claims against a failing financial institution's directors, officers and auditors. FDIC sought to compel the Office of the Comptroller of the Currency ("OCC") to produce examination reports resulting from OCC's examination of the bank. OCC claimed that the documents were protected under the "official information privilege."

The *Franklin National Bank* Court examined the "official information privilege" in detail. The Court held that the primary rationale for the privilege is that "effective and efficient governmental decision making requires a free flow of ideas among government officials and that inhibitions will result if officials know that their communications may be revealed to outsiders." *Franklin National Bank,* 478 F.Supp. at 580–81. *See also United States v. Hooker Chemicals & Plastics Corp.,* 114 F.R.D. 100, 102–03 (W.D.N.Y.1987). The *Franklin National Bank* Court also identified a second rationale for the privilege, noting that the judiciary should not be permitted to "probe the mental processes of an executive officer." *Franklin National Bank,* 478 F.Supp. at 581, *quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 325 (D.D.C.1966), *aff'd,* 384 F.2d 979, *cert. denied* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967).

The *Franklin National Bank* Court held that the two theoretical bases for the "official information privilege" compel the

conclusion that the privilege extends only to expressions of opinion or recommendations in the intragovernmental documents. *Id.* at 581. The Court stated that the privilege does not extend to "purely factual material," *id.,* as "[d]isclosure of facts would neither hinder the free flow of advice in government decision making nor involve improper judicial interference with that process." *Franklin National Bank,* 478 F.Supp. at 582.[13]

■ The *Franklin National Bank* Court then held that even when the government asserts the "official information privilege" with respect to opinions and recommendations, nondisclosure is not guaranteed. *Id.* The Court established a list of some of the factors to balance in considering whether disclosure is warranted.[14] These factors are:

> (i) the relevance of the material sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Id.* at 583 (citations omitted). These factors do not establish an absolute rule mandating disclosure, but require a reasoned case-by-case analysis of the competing interests of the litigants and the potential harm to the government which would result from disclosure. I conclude that this is the proper test to apply in this case.

■ First, although the determination of whether the documents sought are relevant to this litigation must be left to the Special Master, *see* May 31 Memorandum, at 68, these documents may directly relate to the circumstances surrounding the fall of Sunrise. DH & S and the outside directors

**13.** In following the *Franklin National Bank* distinction between factual material and recommendations or opinions, I decline to accept the reasoning of *Seafirst Corp. v. Jenkins,* 644 F.Supp. 1160, 1163–64 (W.D.Wash.1986) (Court holds that the fact/opinion distinction is in some cases illusory). *Compare Delozier v. First National Bank of Gatlinburg,* 113 F.R.D. 522,

525 (E.D.Tenn.1986) (Court affirms validity of fact/opinion distinction).

**14.** While the *Franklin National Bank* Court did not purport to provide an exhaustive list of factors, I conclude that in this case the *Franklin National Bank* factors sufficiently balance the interests of the parties and the government.

assert that the documents present a unique and objective contemporaneous record of the facts and conditions which led to the collapse of Sunrise.[15] I conclude that the category of documents which DH & S and the outside directors seek may be relevant to this litigation.

Second, DH & S and the outside directors claim that the documents in question are unavailable from any other source. While it is true that certain documents DH & S and the outside directors seek were produced to Congress during the investigation of the failure of Old Sunrise, the scope of that production was limited.[16] I conclude that the documents sought are, for all practical purposes, unavailable from any other source.

Third, this case is one of utmost seriousness and involves issues of profound public importance. DH & S and the outside directors claim that FSLIC alone seeks damages of over one-half billion dollars. The seriousness of the litigation is underscored by the fact that a number of former Sunrise officials have been the subject of criminal investigations and two Congressional subcommittees have examined the Sunrise collapse.

Fourth, and of particular significance in this case, is that the government *qua*

FSLIC is deeply involved in this litigation as a plaintiff. DH & S and the outside directors argue that the conclusions of FHLB–A's bank examiners regarding the fall of Old Sunrise may directly challenge the conduct of DH & S and the outside directors, and therefore will impact directly upon crucial issues in the litigation. As a plaintiff, the government has an obligation to be forthcoming with information it possesses which may assist defendants in preparing for trial. *See e.g. United States v. Reynolds*, 345 U.S. 1, 12, 73 S.Ct. 528, 534, 97 L.Ed. 727 (1953) ("It is unconscionable to allow [the government] to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense."). *See also United States v. Andolschek*, 142 F.2d 503, 506 (2nd Cir.1944) ("The government must choose; either it must leave the transactions in the obscurity from which a trial will draw them, or it must expose them fully."); *Walling v. Twyeffort*, 158 F.2d 944, 948 (2nd Cir.) *cert. denied* 331 U.S. 851, 67 S.Ct. 1727, 91 L.Ed. 1859 (1947) ("[T]he [*Andolschek*] doctrine ... applies in civil as well as criminal cases.").[17]

Finally, it is difficult to determine whether disclosure of the information sought will

---

**15.** One of the bases of FSLIC's claims against DH & S is that DH & S negligently audited Sunrise in 1983 and 1984. Thus, DH & S argues that the fact that while DH & S was performing its audit, the bank examiners were interviewing the same persons, examining the same loans and documents and reviewing the adequacy of the Sunrise procedures and management makes the examiners' conclusions relevant to the issue of whether DH & S met its standard of care.

**16.** *See e.g. Impact of Faulty and Fraudulent Real Estate Appraisals on Federal Insured Financial Institutions and Related Agencies of the Federal Government,* 99th Cong., First Sess., Dec 11–12, 1985 (containing some internal agency memoranda related to Sunrise appraisals discovered pursuant to examination of that institution).

FHLB–A does not assert any claim of privilege over internal agency memoranda and workpapers which were published as a result of the Congressional investigation of the Sunrise collapse. *See* Memorandum in Support of Motion of FSLIC, FHLB–A and FADA for Clarification and/or Reconsideration of Certain Governmental Privilege Issues in May 31, 1989 Order

and Memorandum Opinion, at 19. However, FHLB–A has not waived its privilege claim as to documents produced to Congress pursuant to subpoena and which were not published or documents that were not subpoenaed by or produced to Congress. *Id.; see Murphy v. Dept. of the Army,* 613 F.2d 1151, 1155–56, 59 (D.C.Cir.1979); *In re: Consolidated Litigation Concerning International Harvester's Disposition of Wisconsin Steel,* 1987 WL 20408, 1987 U.S.Dist. LEXIS 10912 (N.D.Ill.1987).

**17.** FHLB–A cites a number of cases in support of its privilege claim which are distinguishable in that the government was not involved in the litigation as a party. *See e.g. Homeunity, supra; Colonial Savings, supra; Lincoln Savings, supra; FHLBB v. Superior Court of Arizona,* 494 F.Supp. 924 (D.Ariz.1980). Each of these cases involved litigation between private parties in which third party subpoenas were directed to the FHLBB. FHLB–A has cited no case in support of its privilege claim in which the government was involved as a party to the litigation, or in which the government stood to benefit from the resolution of the litigation.

prejudice bank examiners' future investigations. While the protective order currently in force will address FHLBB's confidentiality concerns,[18] disclosure may result in timidity by government employees in future investigations. I conclude, however, that the role of the government as plaintiff and the seriousness of the litigation and the issues involved substantially outweigh any chilling effect that production of the documents may have.

I conclude that in this case, in which the government is a plaintiff with access to the documents in question, the "official information privilege" does not absolutely protect the documents from production. FHLB-A must produce the workpapers and internal memoranda to the Special Master for review as to relevance.[19]

> D. *The requirements of Vaughn v. Rosen do not apply to FHLB-A's claim of "official information privilege" in this case.*

One final matter requires my attention. DH & S and the outside directors contend that under *Vaughn, supra* n. 10, and its progeny, in order properly to assert a claim of governmental privilege at this time, FHLB-A must provide a formal assertion of the privilege by the head of the respective agency, an affidavit setting forth the specific reasons requiring confidentiality and a *Vaughn* index.[20] *See Resident Advisory Board v. Rizzo,* 97 F.R.D. 749, 752–

53 (E.D.Pa.1983). While these requirements generally attach in FOIA cases, they have been extended to claims of governmental privilege. *Id.; Hotel Rittenhouse Associates,* 101 F.R.D. at 11.

The purpose of a detailed index and supporting affidavits is to provide a party seeking production of documents with material on which to respond to specific privilege claims, and to permit the Court to make a fully informed decision as to the legitimacy of the claimed privilege. *See Ray v. Turner,* 587 F.2d 1187, 1214 n. 56 (D.C.Cir.1978); *Resident Advisory Board,* 97 F.R.D. at 753. *See also Hinton v. Dept. of Justice,* 844 F.2d 126, 128–29 (3d Cir. 1988).

Under the facts of this case, in which the parties have discussed extensively the nature of the withheld documents and have fully briefed the nature of the privilege claims at issue, I conclude that the parties and I have sufficient information concerning the nature of the documents and the privilege FHLB-A claims to make a determination of the validity as to the privilege. In addition, the Special Master will review each document individually to determine its relevance. Therefore, I hold that FHLB-A need not provide *Vaughn* indices and supporting affidavits.

### III. *Conclusion.*

I conclude that although FHLB-A and FADA have properly asserted claims of

---

**18.** In particular, the Protective Order currently in force in this litigation provides that discovery material may be designated "confidential" if disclosure of the documents "... in the good faith opinion of the Federal Home Loan Bank Board and/or the Federal Savings and Loan Insurance Corporation would impair their ability to carry out their statutory and regulatory functions." Protective Order Governing Pretrial Discovery, filed July 17, 1986, ¶ 4.

DH & S has stated its willingness to enter into an additional protective order governing the release of these specific documents. *See* Brief of Deloitte, Haskins & Sells and Outside Directors Pursuant to Order of September 27, 1989 at 20. I see no necessity for the entry of such an Order, as the existing Protective Order more than adequately protects FHLBB's interest in limiting disclosure.

**19.** In his review, the Special Master need not undertake a separate analysis for "factual" ma-

terials and materials containing "opinions." Under *Franklin National Bank,* "factual" materials are discoverable if they are relevant. *See supra,* at 665. Similarly, after balancing the *Franklin National Bank* factors, I have concluded that documents containing "opinions" are also discoverable if relevant. Therefore, because in this case I have concluded that all of the documents are discoverable if relevant regardless of whether they contain "facts" or "opinions," the Special Master will have to determine only whether the documents are relevant to the litigation.

**20.** A *Vaughn* index "is a specific designation and description of the documents claimed to be privileged, of sufficient detail to allow a reasoned determination as to the legitimacy of the privilege." *Resident Advisory Board,* 97 F.R.D. at 753. *See also Conoco v. U.S. Dept. of Justice,* 687 F.2d 724, 728 (3d Cir.1982); *United States v. O'Neill,* 619 F.2d 222, 226 (3d Cir.1980).

"official information privilege," the internal workpapers and memoranda covered by that privilege nevertheless may be subject to production under the reasoning of *Franklin National Bank.* Counsel for FADA and FHLB–A will submit these documents to the Special Master for a determination as to whether the documents in question are relevant to this litigation.